905 So.2d 719 (2004)
Fred H. DREWS, III, and Bonnie Drews, Appellants
v.
CITY OF HATTIESBURG, Appellee.
No. 2003-CA-00823-COA.
Court of Appeals of Mississippi.
September 21, 2004.
Rehearing Denied November 23, 2004.
*720 Lawrence Cary Gunn, Hattiesburg, Attorney for Appellants.
Charles E. Lawrence, Attorney for Appellee.
Before KING, C.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. On March 17, 2003, the Circuit Court of Forrest County affirmed a decision by the Hattiesburg City Council granting six conditional use permits, or zoning variances, for property adjacent to the Forrest County General Hospital. Dr. Fred H. Drews, III and Bonnie Drews appeal, asserting three issues which we quote verbatim:
1. Must the decision of the Hattiesburg City Council to grant size and height "variances" for construction of a medical building be reversed due to the city council's failure to articulate any findings of fact in support of its decision?
2. May size and height variances be granted by the Hattiesburg City Council to allow construction of a medical building six times larger than the maximum allowed by the zoning ordinance?
3. Must the decision of the Hattiesburg City Council be reversed due to lack of compliance with its own rules, i.e., failure to maintain a statutorily required official zoning map and failure to submit the proposed zoning change to the planning commission.
We find that while the variance could arguably benefit the community, the city's decision is directly contrary to the uses permitted by the city's zoning ordinance for property zoned B-1 and constitutes spot zoning. Therefore, we have no choice but to reverse and render. Additionally, as our decision is based only on the first two assignments of error, we do not address the merits of the third assignment.

FACTS
¶ 2. Lee Medical Development owned six lots of land that were originally sized for residential housing adjacent to the hospital in Hattiesburg, Mississippi. These lots were zoned B-1. Lee Medical requested six variances to the city's zoning ordinance in order to build a 60,000 square foot medical office building, of which the Hospital intended to lease a major portion.
¶ 3. The Hattiesburg Board of Adjustments held a public hearing to consider the requests. The board granted four of the variances, which reduced the required "setback" and lessened requirements for numbers of parking spaces specified in the zoning ordinance for medical office buildings. The board denied two of the variances, which would have allowed an increase in building height from 35 to 45 feet and increased the size of a building under one roof from 10,000 to 60,000 square feet. Both the Drews and Lee Medical Development sought review by the Hattiesburg City Council. The city council voted to grant all six variances. The Drews appealed first to the Lamar County Circuit Court, which transferred the appeal to the *721 Forrest County Circuit Court. The Hon. Richard W. McKenzie recused himself, and the Hon. Billy Joe Landrum heard the case and affirmed the city council.

ANALYSIS

STANDARD OF REVIEW
¶ 4. The standard of appellate review applicable to decisions to grant or deny variances from zoning ordinances is well settled.
A reviewing court's obligation on appeal regarding zoning issues that are adjudicative in nature (as opposed to decisions to zone or re-zone, which are legislative) is to determine whether the applicants proved by a preponderance of the evidence that they meet the conditions for a special exception. If the "Board's decision is founded upon substantial evidence," and is not arbitrary or capricious, it is binding on the court; the same standard applies to reviewing administrative agency adjudicative decisions.
Bowling v. Madison County Bd. of Supervisors, 724 So.2d 431 (¶ 22) (Miss.Ct.App. 1998) (quoting Barnes v. Board of Supervisors of DeSoto County, 553 So.2d 508, 510-11 (Miss.1989)). At the municipal level, the burden is on an applicant to show by a preponderance of the evidence that he meets the factors that a municipality's zoning ordinance sets forth, and upon appellate review, if a municipality's decision to grant the variance is supported by substantial evidence, it will not be disturbed. Barnes, 553 So.2d at 511.

I. FINDINGS OF FACT BY THE CITY COUNCIL
¶ 5. The Drews contend that the city council failed to make findings of fact, and that this failure mandates reversal by this Court. The supreme court has stated that local government entities "should" make findings of fact when granting or denying conditional use permits. Id. However, the failure to make explicit findings of fact is not reversible error, and the decision of whether or not to grant the conditional use permit was "tantamount to a finding of fact." Id. at 511-12. See also Petition of Carpenter v. City of Petal, 699 So.2d 928 (¶ 17) (Miss.1997); Mayor and Bd. of Aldermen v. Hudson, 774 So.2d 448 (¶ 12) (Miss.Ct.App.2000). While this issue is without merit, it is necessary to address the second issue of whether the record contains evidence showing that the decision to grant the conditional use permits or variances was permissible under the city's zoning ordinance.

II. VARIANCE AND SIZE OF MEDICAL OFFICE BUILDING
¶ 6. The Drews contend that granting the variance was a "de facto re-zoning of the property." The city's zoning ordinance set forth five factors to be considered when determining whether to grant or deny a variance:
1. The need to protect the stability, integrity, and character of Hattiesburg's residential neighborhoods.
2. The need to preserve and encourage the stability of the Hattiesburg business community.
3. The need to reinforce Hattiesburg's quality of life, preserve neighborhood identity, and boost community pride.
4. The need to conserve and protect Hattiesburg's physical infrastructure.
5. The public need for the proposed use, as opposed to the private interest of an individual.
¶ 7. The minutes of the city council meeting summarized the testimony of citizens speaking in favor of, and in opposition to, the proposed variances. Supporting *722 reasons included providing space for a cancer center, allowing Forrest General Hospital to move facilities and open up more area for parking, and that the proposed medical building was important to recruit and retain physicians. Supporting documents showed that the hospital had seen physician growth from 268 to 325 doctors in the last five years and expected that rate of growth to continue, and that one of the medical building's purposes was to provide office space for these doctors. Viewing the evidence supporting the city council's decision in light of the five factors its zoning ordinance provides, it is apparent that while the Drews' residential use of their property is undoubtedly impacted, the property in question is adjacent to the hospital itself, and the medical building would benefit the business and infrastructure of the community, as well as the community as a whole. An appellate court sitting in review of findings of fact affords deference to an administrative decision in which the decision to grant or deny a variance is at issue, and if the decision can be viewed as "fairly debatable," it will be affirmed. Hearne v. City of Brookhaven, 822 So.2d 999(¶ 9) (Miss.Ct.App.2002). Therefore, were this case to turn solely on the facts of whether the city applied the factors specified in its zoning ordinance, we could affirm.
¶ 8. However, an administrative decision entailing a question of law is viewed de novo. Id. (citing ABC Mfg. Corp. v. Doyle, 749 So.2d 43 (¶ 10) (Miss.1999)). In this case, the zoning ordinance at issue specifically limits medical offices in B-1 zoning to physicians' offices having no more than three physicians per building. The city acknowledges that the medical office building it intends to build would serve as many as ten times that number. Moreover, the largest building permissible in B-1 zoning is 10,000 square feet, while the city acknowledges the building envisioned is six times that size. Additionally, while medical office buildings and 60,000 square foot buildings are permissible under the zoning ordinance in other zoning classifications, they are not permissible in B-1 zones. Oral argument confirmed that the property in question consists of a group of lots originally sized for single family homes, and the result of the proposed medical office building would be a three-story structure on two sides of the Drews' home. Therefore, the city has used the variance request to allow a use impermissible under its own zoning ordinance, and the result would be to allow development on the property which is not only prohibited by the zoning ordinance but also out of harmony with the existing structures on and adjacent to the property.
¶ 9. The Court has held that granting a variance does not result in spot zoning when the use of the property is compatible with the original zoning classification. Mayor and Bd. of Aldermen v. Hudson, 774 So.2d 448 (¶ 13) (Miss.Ct.App.2000). But, in the present case, the use contemplated by the variance request is completely at odds with the zoning ordinance. The city's decision to grant a variance that conflicts with its own zoning ordinance is violative of basic zoning law.
Variances were conceived initially as a means for granting relief from height, bulk, and location restrictions in the ordinances which rendered use of the property impossible or impractical. No conceptual problems arise when the variance is granted to authorize minor departures from the terms of the ordinance; e.g. to permit a landowner to place the structure on his lot nearer the lot line than is permitted by the set-back or side-yard requirements. Such relief does not authorize a use inconsistent with the ordinance and, consequently, does not constitute rezoning under the *723 guise of a variance.... Bulk variances afford relief to the landowner who proves unnecessary and unique hardship, but does not request relief which offends the sprit of the ordinance.
On the other hand, serious questions arise when a variance is granted to permit a use otherwise prohibited by the ordinance; e.g., a service station or quick-stop grocery in a residential district. The most obvious danger is that the variance will be utilized to by-pass procedural safeguards required for valid amendment.
Robert C. Khayat & David C. Reynolds, Zoning Law in Mississippi, 45 Miss. L.J. 365, 383 (1974) (footnotes omitted).
¶ 10. In this case, the city has used the procedure for making administrative adjustments to allow for the efficient use of property within a B-1 zone to effectively re-zone the property in question. This action amounts to spot zoning.
The term "spot zoning" is ordinarily used where a zoning ordinance is amended reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith. Whether such an amendment will be held void depends upon the circumstances of each case. The one constant in the cases, as stated by the textwriter, where zoning ordinances have been invalidated due to "spot zoning" is that they were designed "to favor" someone. See 1 Yokley Zoning Law and Practice §§ 8-1 to 8-3 (3rd ed.1965).
McWaters v. City of Biloxi, 591 So.2d 824, 828 (Miss.1991) (quoting McKibben v. City of Jackson, 193 So.2d 741, 744 (Miss. 1967)).
¶ 11. Therefore, we hold that the decision to grant the variance was in contravention of the zoning ordinance itself and constituted spot zoning. Accordingly, we reverse and render.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS REVERSED AND RENDERED. THE APPELLEE IS ASSESSED ALL COSTS OF THIS APPEAL.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, GRIFFIS AND BARNES, JJ., CONCUR. LEE, P.J., NOT PARTICIPATING.