# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01526-COA

DENNIS SHORT AND SAMMYE M. SHORT          APPELLANTS

v.

BOLIVAR COUNTY BOARD OF          APPELLEES
SUPERVISORS, EDDIE ANDREW WILLIAMS
III, DONNY WHITTEN, PRESTON BILLINGS,
JAMES McBRIDE, AND LARRY L. KING,
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITY AS SUPERVISORS OF BOLIVAR
COUNTY, MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/2019 |
| TRIAL JUDGE: | HON. WILLIE JAMES PERKINS SR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | DAVID LEE GLADDEN JR. |
| | DAVID LENOIR CARNEY |
| | WHITNEY WARNER GLADDEN |
| | BRIDGET K HARRIS |
| ATTORNEY FOR APPELLEES: | CHAD PATRICK FAVRE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.

### McDONALD, J., FOR THE COURT:

¶1. This case is an appeal from a Bolivar County Chancery Court's dismissal of Dennis and Sammye Short's suit against the Bolivar County Board of Supervisors and its individual members,[1] concerning zoning enforcement actions or inactions by the Board. The Shorts'

---

[1] The Board members included Eddie Andrew Williams III, Donny Whitten, Preston Billings, James McBride, and Larry L. King. Hereafter, the Board and its members will be

action sought an injunction to force the Board to move forward on an action that the Board had filed to stop Antonio Lawson from operating a juke joint in violation of the zoning code that the Board had established. The Board had filed its injunction action against Lawson in 2012 but had allegedly allowed it to stall. The Shorts' suit filed in 2014 sought an order compelling the Board to press the litigation it had started against Lawson.

¶2. In March 2018, the Board did obtain relief from the chancery court, which enjoined Lawson's illegal operation. The Board then moved to dismiss the Shorts' suit on January 16, 2019. The Shorts fought dismissal, saying that although their request for injunctive relief was moot, they were still entitled to damages (i.e., payment of their attorney's fees). After hearing the matter on April 15, 2019, the chancery court granted the Board's motion to dismiss. The Shorts have appealed.

¶3. After a review of the record, the arguments of counsel, and relevant precedent, we find no error by the chancery court and affirm the dismissal of the Shorts' case. We hold that the Shorts failed to state a cause of action against the Board because zoning enforcement is a discretionary function. Because the duty was not mandatory, there is no legal basis for the Shorts' claim. Nor have the Shorts pled a separate cause of action in this case under Mississippi Code Annotated section 25-1-45 (Rev. 2018) because that statute allows suits on an official's bond only if he fails to perform a mandatory duty. Moreover, because there was no viable cause of action against the Board, the Shorts are not entitled to any damages or attorney's fees.

---

referred to as the "Board."

**Facts**

¶4.     A long series of events led up to the filing of the Shorts' lawsuit, beginning with the Board's zoning and re-zoning of the property where Antonio Lawson ultimately operated his juke joint and mini-mart, The Sugar Shack.

*2008*

¶5.     In July 2008, the Board passed the Bolivar County Development Code, which incorporated a zoning map and land-use district map. As a result, the property located at 407 Old Highway 61 in Choctaw, Mississippi, on which Lawson was operating "Lawson's Mini Mart," was zoned as an R-1-Low Density Residential District. But the Development Code contained a "grandfather clause" that allowed the mini-mart to continue operation.

*2012*

¶6.     On July 8, 2012, Lawson's Mini Mart burned and was completely destroyed. Exemptions under the grandfather clause of the zoning code expired if the property was damaged more than sixty percent.[2] Because the mini mart was completely destroyed, Lawson's operation, if rebuilt and operated as such, would no longer be "grandfathered" into

---

[2] Article IV- General Provisions of the Development Code provided:

a. Non-Conforming Uses — Any use or structure existing at the time of enactment of or subsequent amendment to this ordinance, but not in conformity with its provisions, may be continued with the following limitations. Any use or structure which does not conform to the provisions of this ordinance shall not be: . . .

iv. Rebuilt, altered, or repaired after damage exceeding sixty percent (60%) of its market value immediately prior to the damage.

3

compliance in the residentially zoned area, and it would become a non-conforming use.

¶7.     Lawson chose to rebuild not only the mini-mart but also a lounge called "The Sugar Shack."  After construction was underway, Lawson appeared at a Board meeting on August 6, 2012 and requested a zoning variance.  The Board granted Lawson's request.  However, residents in the community were given no notice of Lawson's request or of the Board meeting, and they objected when they discovered what the Board had done.  On August 16, 2012, the Shorts and other concerned citizens filed a notice of appeal and bill of exceptions to the Board's actions in the Bolivar County Circuit Court.  Lawson too filed a similar appeal.  The Shorts hired an attorney, who began interacting with the Board about their concerns.

¶8.     On September 4, 2012, the Board rescinded its decision to grant Lawson the variance.  It sent a letter to Lawson telling him of the rescission and ordering him to stop construction.  Lawson claimed he did not receive the letter, and again the Shorts' attorney alerted the Board to the lack of response by Lawson.  The Board's attorney sent another letter on September 10, 2012.  The Bolivar County Sheriff also personally delivered the letter to Lawson.  But Lawson continued to build and complete his commercial operation.

¶9.     On September 20, 2012, Lawson filed a "Land Use Application" with the Bolivar County Planning Commission, requesting that the property on which he had re-built his business be re-zoned.[3]  Again, Lawson did not follow established protocols, and the Planning Commission made no decision on his application at that time.

---

[3] Lawson was building on his property, as well as property owned by Patricia Patrick. Ultimately, Lawson, his wife, Helen, and Patrick operated The Sugar Shack.

¶10.   On September 30, 2012, notice was published in the Cleveland Current of a public hearing on re-zoning application filed by Lawson for The Sugar Shack property. The hearing was held on October 18, 2012, and at the end, the Planning Commission voted to deny the application.

¶11.   On November 5, 2012, the Board filed suit in the Bolivar County Chancery Court against Lawson and the other owners to enjoin the operation of The Sugar Shack. Lawson responded, and on December 7, 2012, the Shorts and other citizens filed joinders to the Board's complaint. The chancery court held a hearing on December 10, 2012, but declined to rule because it felt it did not have jurisdiction until the appeals and bills of exceptions filed with the circuit court were dismissed.

*2013*

¶12.   It took the Shorts' attorneys several months to get the administrative appeals to the circuit court dismissed. Once they were, on October 2, 2013, the Shorts contacted the Board about moving forward on the Board's chancery court action against Lawson. But they received no response.

¶13.   Meanwhile Lawson submitted a second Land Use Application to the Planning Commission. The Planning Commission met and, on November 21, 2013, ordered that the county engineer validate the land use. The Board decided not to move in its chancery court action until the re-zoning application had been addressed.

*2014*

¶14.   In January 2014, Lawson denied the engineer access to his property. The Shorts'

attorney sought to meet with the Board of Supervisors, but his request to be put on the Board's agenda was refused. The Shorts' attorney contacted the Planning Commission which told him that the Commission had already made its recommendation to the Board. The Shorts' attorney then wrote each Board member urging that the Board move forward on the Board's filed injunction action against Lawson.

¶15.   After no action was taken through the rest of 2014, on December 18, 2014, the Shorts filed an injunction action against the Board, which is the subject of this appeal. They sought an order both forcing the Board to move on its 2012 chancery court action against Lawson and awarding them damages in the form of attorney's fees.

*2018*

¶16.   Neither party explains what, if anything, happened in this case between 2015 and 2018. The Board did finally pursue its own chancery court action against Lawson. On March 7, 2018, it obtained a permanent injunction against Lawson and The Sugar Shack, prohibiting continued operation after June 5, 2018. This action mooted the Shorts' request for injunctive relief in this case. However, the Shorts still pursued their demand for damages.

*2019*

¶17.   On January 16, 2019, the Board and individual board members moved to dismiss the Shorts' complaint under Mississippi Rule of Civil Procedure 12(b)(6). They argued:

> (1)   that the authority of enforcement of zoning ordinances, found in Mississippi Code Annotated section 17-1-19 (Rev. 2012),[4] is discretionary and

---

[4] Section 17-1-19 provides:

In case any building or structure is erected, constructed, reconstructed, altered,

6

that the Shorts cannot compel the Board to perform an action that is discretionary.

(2) that the Shorts cannot recover attorney's fees for an action seeking injunctive relief.

(3) that the Board and members are immune from suit under Mississippi Code Annotated section 11-46-9 for any claim for damages or attorney's fees because individual members are immune under section 11-46-1(g), (i), and because the Board is immune since zoning enforcement actions are discretionary.

¶18. On February 25, 2019, the Shorts responded that they should be able to survive a Rule 12(b)(6) motion. They contended that the actions of the Board were not discretionary, but that the Board failed to comply with a mandatory duty to enforce its zoning ordinances. Further, the Shorts argued that there is precedent for citizens suing governmental bodies and that Mississippi Code Annotated section 25-1-45 (Rev. 2018)[5] allows civil actions based on

---

repaired, converted or maintained, or any building, structure, or land, is used in violation of the zoning law or of any ordinance or other regulation made under authority conferred hereby, the proper local authorities of any county or municipality, in addition to other remedies, may institute any appropriate action or proceedings, to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct, or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business, or use in or about such premises.

[5] Section 25-1-45 provides:

If any county, county district, or municipal officer who has executed bond for the faithful performance of duty shall knowingly or wilfully fail, neglect, or refuse to perform any duty required of him by law or shall violate his official obligations in any respect, the president or, in the absence or disability or default of the president, the vice-president of the board of supervisors in case of a county or county district officer, and the mayor in case of a municipal officer, or any person interested in either case shall cause suit to be brought on the bond of such officer for the recovery of the damages that may have been sustained thereby.

7

the bond of elected officials for failure to perform their duties.

¶19. On March 4, 2019, the Board and its members filed a "Motion to Strike Plaintiff's Response" because it was not timely filed under Rule 4.02 of the Uniform Civil Rules of Circuit and County Court Practice, which allowed ten days, plus three for mailing.

¶20. The chancery court heard argument on both the motion to dismiss and motion to strike on April 15, 2019, and issued its ruling granting the Board's motion to dismiss on September 4, 2019. It said that there was nothing in the complaint that alleged that any of the Board members were being sued on their bond. It further held that Mississippi Code Annotated section 17-1-19 gives discretionary authority to the Board to enforce zoning ordinances. With respect to damages, the court held that this case did not fit any of the three instances when attorney's fees may be awarded: a contract, statutory authority, or punitive damages. Even if punitive damages are not awarded, the court noted that it could award attorney's fees if the defendant's conduct warranted punitive damages. In this case, the court found:

> Plaintiffs have failed to prove by clear and convincing evidence that Defendants acted with actual malice, gross negligence, which evidences a willful, wanton or reckless disregard for the safety of others or committed actual fraud to justify an award of punitive damages.

The court found said that Plaintiffs could not point to any law that the Defendants failed to perform or mandatory duty they refused to undertake. The court also granted the motion to dismiss with respect to injunctive relief as that issue was now moot. With respect to the Motion to Strike, the court said that it had obviously considered the Shorts' response, and, thus, the court considered the motion moot.

¶21. The Shorts timely filed an appeal from the chancery court's ruling and raise the

following issues: (1) whether enforcement of zoning ordinances under section 17-1-19 is a discretionary function, giving the Board immunity from suit; and (2) whether section 25-1-45 permitting suits against public officials on their bonds applies to the Shorts' lawsuit.

¶22. The Board frames the issues slightly differently, arguing: (1) the chancery court did not err when it granted the motion to dismiss, finding the controversy moot; (2) the chancery court did not err because the Board did not have a ministerial duty under section 17-1-19 to institute court proceedings against Lawson because (A) the Shorts' complaint failed to allege a cause of action under section 25-1-45, and (B) the discretionary authority in section 17-1-19 was not factually transformed into a ministerial duty; (3) the doctrine of sovereign immunity applies to the Board's discretionary acts in enforcement of zoning laws under the public-function test, and (4) the Shorts failed to allege malice or gross negligence evidencing a willful, wanton, or reckless disregard for the safety of others to support an award of damages.

## Discussion

### I.    Whether the Shorts pleaded a cause of action for breach of duty.

#### *A.    Claim for Injunctive Relief*

¶23. The Shorts filed a complaint in the chancery court under Rule 65 of the Mississippi Rules of Civil Procedure for a preliminary and permanent injunction against the Board to force it to take action in the lawsuit that the Board had filed against Lawson. Under Rule 65, the Shorts were required to demonstrate that "(i) there exists a substantial likelihood that they will prevail on the merits; (ii) the injunction is necessary to prevent irreparable harm; (iii) the

9

threatened injury to them outweighs the harm an injunction might do to the opposite party; and (iv) granting a preliminary injunction is consistent with the public interest." *Littleton v. McAdams*, 60 So. 3d 169, 171 (¶10) (Miss. 2011). A plaintiff must plead a viable cause of action against a defendant before injunctive relief can be granted. *Hinton v. Rolison*, 175 So. 3d 1252, 1260 (¶27) (Miss. 2015) (quoting *Greater Fairview Missionary Baptist Church v. Hollins*, 160 So. 3d 223, 229 (¶21) (Miss. 2015)). "Mississippi courts are not authorized to resolve every claim and dispute that may arise between our citizens. The plaintiff must file a complaint which alleges some cognizable claim or cause of action against the defendant."

*Id.* Moreover,

> Permanent injunctive relief may be granted only to protect and prevent the violation of some substantive "legal right." *See Tallahatchie Valley Elec. Power Ass'n v. Miss. Propane Gas Ass'n Inc.*, 812 So. 2d 912, 927 (¶50) (Miss. 2002). A permanent "injunction is a 'remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.'"

*Waite v. Adkisson,* 282 So. 3d 744, 750 (¶17) (Miss. Ct. App. 2019).

¶24. In their complaint, the Shorts alleged that their cause of action against the Board arose from the Board's breach of a mandatory duty to enforce its zoning ordinances. The Shorts specifically alleged that under Mississippi Code Annotated section 17-1-19, "it is the duty and responsibility of the Bolivar County Board of Supervisors through each District Representative to enforce the laws, ordinances and regulations applicable in this matter." Further, they alleged that "in the face of the continued illegal operation of the Sugar Shack, the Board of Supervisors continues to ignore its fiduciary obligations, responsibilities and

10

the repeated requests the citizens which it duly represents to move forward with appropriate legal action to have The Sugar Shack business closed down."

### B. Rule 12(b)(6) Motion

¶25. The Board filed a motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, asserting that the Shorts had pleaded no cause of action because the Board breached no ministerial (i.e., mandatory) duty. A Rule 12(b)(6) motion tests the legal sufficiency of the complaint that we review under the de novo standard. *Rose v. Tullos*, 994 So. 2d 734, 737 (¶11) (Miss. 2008). When considering a motion to dismiss, "[t]he allegations in the complaint must be taken as true, and there must be no set of facts that would allow the plaintiff to prevail." *Id*. The Shorts contend that their complaint states a viable cause of action against the Board for the its failure to enforce its zoning ordinances. They claim that this breach of the Board's duty caused them damages. Key to the viability of the Shorts' case, then, is whether the Board's duty to enforce zoning ordinances is ministerial or discretionary.

### C. Ministerial v. Discretionary Duties

¶26. "A ministerial duty is a duty that is 'positively designated . . . by statute, ordinance, or regulation.'" *J.E. v. Jackson Pub. Sch. Dist.*, 264 So. 3d 786, 791 (¶13) (Miss. Ct. App. 2018). "There is no element of choice or judgment. Therefore, the duty is ministerial." *Booneville Collision Repair Inc. v. City of Booneville*, 152 So. 3d 265, 276 (¶31) (Miss. 2014). For example, Mississippi Code Annotated section 27-41-79 (Rev. 2017) imposes upon the county tax collector a ministerial duty to file the tax-sale list with the chancery

11

clerk:

> The tax collector shall on or before the second Monday of May and on or before the second Monday of October of each year, transmit to the clerk of the chancery court of the county separate certified lists of the lands struck off by him to the state and that sold to individuals, specifying to whom assessed, the date of sale, the amount of taxes for which sale was made, and each item of cost incident thereto, and where sold to individuals, the name of the purchaser, such sale to be separately recorded by the clerk in a book kept by him for that purpose. . . .

Miss. Code Ann. § 27-41-79. Similarly Mississippi Code Annotated section 27-45-5 imposes

a mandatory duty upon chancery clerks to deposit tax-sale redemption funds:

> It shall be the duty of the chancery clerk of each county in the state to immediately deposit in the county depository of his county all sums of money paid to him by any person for the redemption of land sold for taxes in his county; all such funds are hereby declared to be public funds, and shall be secured by the county depository, as other public funds are required to be secured by law. . . .

Miss. Code Ann. § 27-45-5 (Rev. 2017).

¶27.    The Mississippi Code Annotated grants discretionary authority to cities and county

boards to establish zoning codes and maps:

> Except as otherwise provided in Article VII of the Chickasaw Trail Economic Development Compact described in Section 57-36-1, for the purposes set forth in Section 17-1-3, the governing authority of each municipality and county *may* divide the municipality or county into zones of such number, shape and area as may be deemed best suited to carry out the purposes of Sections 17-1-1 through 17-1-27, inclusive. Within the zones created, the governing authority of each municipality and county *may*, subject to the restrictions with respect to agricultural lands and farm buildings or structures as set out in Section 17-1-3, regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All regulations shall be uniform for each class or kind of buildings throughout each zone, but regulations in one zone may differ from those in other zones.

Miss. Code Ann. § 17-1-7 (Rev. 2012) (emphasis added).  In statutory construction, the use

of the word "may" indicates a discretionary function. *Moore v. State*, 287 So. 3d 905, 918 (¶51) (Miss. 2019) ("When used in a statute, the word 'shall' is mandatory and the word 'may' is discretionary."). Thus, the Mississippi Code Annotated clearly establishes that the creation of zoning ordinances is discretionary. However, there is no specific statute dealing with the nature of the duty, if any, to enforce the ordinances established.

¶28. Board actions with respect to zoning fall into different categories. The Mississippi Supreme Court has held that the enactment of a zoning ordinance is a legislative function. *Hatfield v. Bd. of Supervisors of Madison Cty.*, 235 So. 3d 18, 20 (¶9) (Miss. 2017); *Luter v. Hammon*, 529 So. 2d 625, 628 (Miss. 1988). "Both zoning and rezoning are legislative rather than judicial matters." *Walters v. City of Greenville*, 751 So. 2d 1206, 1208 (¶6) (Miss. Ct. App. 1999). However, decisions on zoning variances or special permits are adjudicative and reviewable by the courts:

> A reviewing court's obligation on appeal regarding zoning issues that are adjudicative in nature (as opposed to decisions to zone or re-zone, which are legislative) is to determine whether the applicants proved by a preponderance of the evidence that they meet the conditions for a special exception.

*Drews v. City of Hattiesburg*, 905 So. 2d 719, 721 (¶4) (Miss. Ct. App. 2004). Although a city or a county board's decision concerning special use exceptions or rezoning is subject to review by its county's circuit court, the review is limited:

> In examining a zoning order issued by a city council, circuit courts sit as appellate courts with a restricted scope of judicial review. Those attacking a zoning order must show that it is 'arbitrary, capricious, discriminatory, or beyond the legal authority of the city board, or unsupported by substantial evidence.'

*Walters v. City of Greenville*, 751 So. 2d 1206, 1208-09 (¶9) (Miss. Ct. App. 1999) (citing

*McWaters v. City of Biloxi*, 591 So. 2d 824, 827 (Miss. 1991)) (quoting *Ridgewood Land Co. v. Moore*, 222 So. 2d 378, 379 (Miss. 1969)). Any challenge that is "fairly debatable" will not be sufficient to invalidate a Board's zoning decision. "In attempting to hold such ordinances invalid, either per se or as applied, the burden of proof lies with the challenger and, where the matter in issue is 'fairly debatable,' we will not disturb the governing body's action." *Mayor & Bd. of Aldermen, City of Clinton v. Welch*, 888 So. 2d 416, 419 (Miss. 2004).

### D. The Nature of the Duty to Enforce Zoning Ordinances

¶29. Although Mississippi law is well settled on the discretionary authority of the Board to create zoning ordinances and the limited authority of the courts to review a Board's zoning decisions, this case presents a different question—what is the nature of the duty of a city or board to enforce the ordinances it passes. The Shorts contend that zoning *enforcement* is a ministerial (i.e., mandatory) governmental function and that the Bolivar County Board of Supervisors failed to adequately perform that duty. By "breaching" that ministerial duty, the Shorts claim they have been damaged by having to pay attorneys to get action.

¶30. The Mississippi Code only addresses the Board's zoning enforcement options in Mississippi Code Annotated section 17-1-19 (Rev. 2012). That section identifies the remedies available to a Board when it seeks to enforce its ordinances:

> In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building, structure, or land, is used in violation of the zoning law or of any ordinance or other regulation made under authority conferred hereby, the proper local authorities of any county or municipality, in addition to other remedies, **may** institute any appropriate action or proceedings, to prevent such unlawful erection, construction,

14

> reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct, or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business, or use in or about such premises.

Miss. Code Ann. § 17-1-19 (emphasis added).

¶31. This statute uses the discretionary language, "may," and the Shorts agree that this statute gives the Board discretion in *how* to enforce its zoning ordinances. But, they reason that by identifying the options available to the Board, the legislature implied that the Board was required to act in some form or fashion. The Shorts provide no authority for this proposition and agree none exists in Mississippi law. They argue that *Noble v. Scheffler*, 529 So. 2d 902 (Miss. 1988), is instructive on the nature of the duty of enforcement, but that case is not applicable to the issue before us. That case only required that a board follow its own ordinances when it granted a conditional use.[6] The Court held that although the zoning

---

[6] In that case, in 1980, Noble sought a permit from Jackson County to operate a real estate and insurance office on his residential property. *Id*. at 903. The county approved, but a neighbor appealed the decision to the Circuit Court of Jackson County, which reversed the county's approval in 1981, apparently because Noble did not erect a privacy fence or honor minimum lot size and set back requirements. *Id*. at 903-04. Nevertheless Noble continued, without making any changes, to operate his real estate office in that location until 1984 when the county planning commission advised him that his office use was impermissibly operating in a residential zone. *Id*. at 904. Noble applied for a use permit, and notice of the application was given to nearby property owners. *Id*. After a hearing, the commission granted the application. *Id*. Objector Scheffler appealed to the Board of Supervisors which held another hearing. *Id*. The Board again granted the application, and Scheffler again appealed to the Circuit Court. *Id*. The circuit court again reversed, and the Board appealed. *Id*. The Supreme Court noted specific requirements of the zoning ordinances concerning yard size and setback regulations. *Id*. at 905. It found that none of the ordinances were passed or enforced in violation of anyone's equal protection rights. *Id*. at 906. It further found that the grant of the permit was not arbitrary or capricious. *Id*. at 906-07. But the Supreme Court did find that the ordinances themselves dictated specific setback and fencing requirements to which the Board was required to adhere. *Id*. at 907.

15

authorities had the authority to grant Noble a permit to use his property for a real estate and insurance office, they did not have the authority to allow Noble to deviate so completely from the yard area and setback rules. *Id*. at 907. "Suffice it to say that local zoning authorities may not ignore but must abide by the restrictions of all applicable zoning ordinances." *Id*. *Noble* does not hold that zoning authorities must enforce all zoning ordinances. It only establishes that once they do seek to enforce them, they are bound by the parameters in the ordinances that have been established.

¶32. Public entities and officials are immune from suit if they are performing a discretionary function. *Bailey v. City of Pearl*, 282 So. 3d 669, 673 (¶10) (Miss. Ct. App. 2019). To determine whether a government action is discretionary, we use the "public policy function test." *Moses v. Rankin County*, 285 So. 3d 620, 624 (¶10) (Miss. 2019):

> The public-policy function test has two parts. This Court first must ascertain whether the activity in question involved an element of choice or judgment. If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations. Only when both parts of the test were met did a government defendant enjoy discretionary-function immunity.

*Id.* (citations and internal quotation marks omitted). The process involves identifying the government actions and determining whether they are "real policy decisions implicating governmental functions" or "simple acts of negligence which injure innocent citizens." *Id.* Thus, "[w]hen reviewing whether a challenged action is afforded immunity, a court's focus is 'on the nature of the actions taken and whether they are susceptible to policy analysis.'" *Id*.

¶33. Although no Mississippi precedent has specifically determined whether zoning

16

enforcement is ministerial or discretionary, courts in other jurisdictions have dealt with the issue. In *Greenfield v. Reynolds*, 1 A. 3d 125 (Conn. App. Ct. 2010), the Connecticut Appellate Court held that the enforcement of zoning regulations, which, logically, is "done for the direct benefit of the public," is a discretionary act, "not amenable to mandamus relief." *Id*. at 130. In that case, a landowner in the Town of Westport, Connecticut, filed a mandamus action to require the town's zoning enforcement officer to issue a cease and desist order to the landowner's neighbor for violating the zoning-ordinance requirements concerning the neighbor's garage. *Id*. at 126-27. In Connecticut, mandamus actions were proper only when "(1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." *Id*. at 128. To support her position that zoning enforcement was mandatory and not discretionary, Greenfield pointed to a Connecticut statute similar to Mississippi Code Annotated section 17-1-19, providing:

> If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein.

*Id.* at 128-29 (citation omitted). Greenfield made the same statutory-interpretation argument that the Shorts make here; namely, because the statute says that an officer of the authority is

17

charged with enforcing the ordinances, using the word "shall," then the town itself has a mandatory duty to enforce the ordinances. *Id.* at 129. The Connecticut Appellate Court concluded that "in the present case, it is clear that the word 'shall' simply establishes who has the duty to enforce zoning regulations. Moreover, it is clear that the power to enforce zoning regulations conferred by § 8–12 on town officials is discretionary." *Id.*[7]

¶34. Louisiana held that zoning ordinance enforcement is a discretionary function in *Clothesline Laundromat Inc. v. City of New Orleans*, 98 So. 3d 901 (La. Ct. App. 2012). In that case Clothesline, which operated five carwashes, sued the city "through its director of safety and permits, Paul May" to inspect "outlaw" carwashes in the area and enforce the zoning ordinances. *Id*. at 901-02. The lower court denied the relief, and the appellate court affirmed, finding that the action that Clothesline sought to compel was a discretionary function. *Id.* It pointed out that "in our tripartite system of government, the judicial branch may not ordinarily interfere in the discretionary policy preferences and selections of the legislative and executive branches." *Id.* at 902. It proceeded to determine that zoning enforcement was a discretionary, not a ministerial, function, saying "we have previously decided that we may not compel the enforcement of the City's zoning laws because enforcement is not a ministerial duty but a discretionary practice." *Id.* It cited *Wilkinson v. LaFranz*, 574 So. 2d 403, 405 (La. Ct. App.1991) ("Because enforcement of the zoning

---

[7] The discretionary nature of zoning enforcement, as found in *Greenfield*, was underscored in a more recent Connecticut Appellate court decision, *Mangiafico v. Town of Framington*, 163 A. 3d 631, 641 (Conn. App. Ct. 2017). Citing *Greenfield*, the court said: "Simply put, the statutory provisions of §7–152c do not require the town to commence enforcement proceedings on all issued citations. If, as argued by the plaintiff, the procedure is unfair, it is within the province of the legislature to amend the statutory provisions." *Id.*

18

ordinances by public officers is clearly discretionary, mandamus is not an appropriate remedy in this case.").

¶35. In *Payne v. Shelby County Commission*, 12 So. 3d 71, 81 (Ala. Civ. App. 2008), the Alabama Court of Civil Appeals determined that there was no tort liability when a zoning authority failed to enforce its zoning ordinances. In that case, the county commission had placed conditions on its approval of a rezoning application that allowed an area in a residential neighborhood to become an office and institutional district. *Id.* at 74. These conditions included, among other things, a minimum set back for areas adjacent to a residential property, height, square footage and exterior design restrictions. *Id.* When the owner-developer failed to perform these conditions, including building a berm to block homeowners' view of the office development, and the county commission failed to force him to do so, the Paynes filed suit. *Id* at 75-76. The Paynes claimed that the county and its planning commission's inactions made them liable for negligence, misrepresentation, and other causes of action. *Id.* at 76. The county argued that they owed no duty to the Paynes that would give rise to liability. *Id.* at 77. The circuit court of Shelby County granted the county and the county commission's motion for summary judgment, and the Paynes appealed. *Id*. at 74. The Alabama Court of Civil Appeals examined their claims and among other things found that

> a governmental entity is not subject to tort liability for its failure to enforce local ordinances. See, e.g., *Shearer v. Town of Gulf Shores*, 454 So. 2d at 979; and *Davenport v. Neely*, 7 F. Supp. 2d at 1231. Thus, the Paynes cannot claim that they reasonably relied upon the language of the conditional zoning ordinance to ensure that certain action would be taken by the County Commission or the Planning Commission; the Paynes likewise cannot recover

19

in tort for the alleged failure of the County Commission or the Planning Commission to take enforcement action against Burch.

*Id.* at 81-82. In reaching this decision, the Alabama Court of Civil Appeals reviewed decisions of other courts that had found there was no mandatory duty to enforce zoning decisions, including the following:

> *Maciejko v. Lunenburg Fire Dist.* No. 2, 171 Vt. 542, 758 A. 2d 811 (2000) (recognizing that plaintiffs had no cause of action against a city fire district arising out of its failure to enforce its ordinances); *Geimer v. Chicago Park Dist.*, 272 Ill. App. 3d 629, 630, 650 N. E. 2d 585, 590, 208 Ill. Dec. 891, 896 (1995) (recognizing common-law rule that municipalities are not liable in tort and owe no duty to individual members of the general public for failure to enforce local laws and ordinances); *Scheurman v. Department of Transp.*, 434 Mich. 619, 635, 456 N.W.2d 66, 73 (1990) (recognizing that governmental agencies are not liable for the failure to investigate or enforce ordinance violations); and *Berger v. City of University City*, 676 S.W.2d 39, 42 (Mo. Ct. App. 1984) (recognizing that a city is not liable for failing to enforce its ordinances). If a governmental entity's failure to investigate or to enforce its own ordinance does not give rise to a tort action, a governmental entity's decision among various enforcement options as to how best to enforce a zoning ordinance likewise does not give rise to a tort action.

*Id.* at 81.

¶36. Likewise, Maryland's Court of Appeals reviewed a mandamus action brought against Baltimore County because it failed to take action against a property owner who had paved a parking lot when the county had previously prohibited it. *Falls Road Community Ass'n v. Baltimore Cty*, 85 A. 3d 185, 193 (Md. 2014). There, the community association argued as do the Shorts here—that the county had the discretion to choose among the methods of enforcement, but it was nevertheless obligated to take some enforcement action. *Id.* at 133. On appeal, the Court of Appeals of Maryland rejected this argument. It said:

> As the Circuit Court pointed out in its ruling on summary judgment, "while the

20

County is charged generally with the responsibility to enforce land use and zoning requirements, it clearly does not pursue enforcement on every arguable violation. There are a myriad of discretionary decisions made in determining how to employ limited resources. It is well within the discretion of County officials to pick and choose among the categories of violations, or to prioritize certain types or areas of enforcement. The County may also legitimately decide not to pursue enforcement in matters where they believe, perhaps even wrongly, that they may not prevail. The enforcement arena is simply littered with decisions that are discretionary."

While mandamus may be available to compel county officials to carry out certain zoning-related ministerial duties, such as the issuance of a particular type of permit when all requirements are met, a decision to deploy the county's resources to take particular enforcement actions is a discretionary—not ministerial—duty. This discretion is comparable in some instances to that of a State's Attorney who must decide which criminal cases to prosecute. Discretion is sometimes exercised by a decision not to initiate a case. Indeed, many prosecutors will attest that the most difficult, but wisest decision, that a prosecutor makes is to forgo prosecution in a case when for some reason it is not in the interest of justice, even though it would be legally permissible to mount a prosecution.

*Id*. at 142-43 (citations omitted). The Maryland Court of Appeals also rejected the argument

that mandatory language in the County Code itself created a mandatory duty to enforce it:

The Community Association latches on to the use of the verb "shall" in a number of provisions of the County Code that identify the agency responsible for enforcing certain categories of laws and argues that this verbiage mandates enforcement action in each and every possible case—an argument to some extent accepted by the intermediate appellate court. But such provisions simply identify the duties and responsibilities of the agency. They do not dictate enforcement action in every case. The use of the word "shall" in those contexts is no different than its use in the statutory provision that describes the duties of a State's Attorney. *See* Maryland Code, Criminal Procedure Article, § 15-102 ("[A] State's attorney shall . . . prosecute . . . all cases in which the State may be interested.").

*Id.* at 144.

¶37.    Illinois recently determined that zoning enforcement is discretionary, dismissing

arguments similar to those the Shorts raise here. *Ryan v. City of Chicago*, 147 N. E. 887, 895-96 (Ill. App. Ct. 2019). There Ryan sued the city and building department officials to compel her neighbor to move a fence that had been built in violation of a zoning ordinance. *Id.* at 889. Similar to Mississippi's statute (section 17-1-19), Illinois has a zoning-enforcement statute that gives local authorities options of enforcement:

> In case any building or structure, including fixtures, is constructed, in violation of an ordinance or ordinances adopted under Division 13 [(concerning zoning)], 31 [(concerning unsafe property)] or 31.1 [(concerning building code violations)] of the Illinois Municipal Code, the proper local authorities of the municipality, or any owner or tenant of real property, . . . who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, or (4) to restrain, correct, or abate the violation.

*Id.* at 891 (cleaned up) (quoting 65 Ill. Comp. Stat. Ann. 5/11-13-15) (2018)). Ryan argued that this section when coupled with the Zoning Ordinance itself, that required compliance with the minimum setbacks between homes that the fence violated, made zoning enforcement mandatory. *Id.* at 892. The Illinois court rejected this argument, finding that the extreme remedy of mandamus is to be used only when a public officer's performance of his or her duties involved no exercise of discretion. *Id.* at 892-93. The court said that zoning enforcement did not. The court held:

> In our opinion, the circuit court correctly determined that the municipal defendants had no clear duty to perform any of those acts because those parties had discretion in their enforcement of the Zoning Ordinance.

*Id*. 893-94.

¶38. Florida used a separations-of-powers analysis to conclude that zoning enforcement

is discretionary. In *Trainon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985), the Florida Supreme Court held that a government entity is not liable in tort to individual property owners for the failure to enforce provisions of building and zoning codes. *Id*. at 919. There, condominium owners sued the City for severe roof leakage on the basis that the city building inspectors had negligently inspected the building. *Id.* at 914. The *Trainon Park* court based its analysis on the doctrine of separation of powers whereby the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights. *Id.* at 918. To hold otherwise, the *Trainon Park* court reasoned, "would require the judicial branch to second guess the political and police power decisions of the other branches of government and would violate the separation of powers doctrine." *Id.* The court held that

> no statutory duty for benefit of individual citizens was created by the city's adoption of the building code, and therefore there is no tort liability on the part of the city to the condominium owners for the allegedly negligent exercise of the police power function of enforcing compliance with the building code.

*Id* at 915. Thereafter, one of Florida's five district court of appeals applied the *Trainon Park* decision in a zoning enforcement case before it. In *Detournay v. Coral Gables*, 127 So. 3d 869 (Fl. Dist. Ct. App. 2013), the City of Coral Gables had issued three administrative citations against Amace, the owner of a commercial property located near Detournay's home. *Id*. at 871. After issuing the citations, however, the City held them in abeyance for several years while attempting to settle with the owner. *Id.* Unhappy at the City's failure to vigorously prosecute Amace, Detournay and her homeowners' association sued the City of Coral Gables to require the city to prosecute an enforcement action. *Id.* at 870. They argued

23

that the city's refusal to enforce the zoning code, after three notices of violation were issued

and the violation was confirmed, injured them and all citizens. *Id.* The trial court dismissed

the action and Detournay appealed. *Id.* On appeal, the Florida appellate court relied upon

*Trainon* and said:

> [T]he City's discretion to file, prosecute, abate, settle, or voluntarily dismiss a building and zoning enforcement action is analogous to a prosecutor's discretion to file, prosecute, abate, settle, or dismiss a criminal or civil lawsuit. The prosecutor's discretion in this regard is a pure executive function that cannot be supervised by the courts, absent the violation of a specific constitutional provision or law.
>
> It follows in the instant case that the City's discretion to file, prosecute, abate, settle, or dismiss a building and zoning enforcement action against Amace is an executive function that cannot be supervised by the courts, absent the violation of a specific constitutional provision or law.

*Detournay*, 127 So. 3d at 873.[8]

### E. *Application of Caselaw to this Case*

¶39. Applying Mississippi's "public policy function test" and examining the rationale and

holdings of other jurisdictions, we hold that zoning enforcement by cities and county boards

is a discretionary function. Mississippi Code Annotated section 17-1-19 gives authorities the

discretion to choose the enforcement avenue they find best in light of the circumstances but

---

[8] Another Florida District Court of Appeal has recently disagreed with *Detournay* in *Haver v. City of West Palm Beach*, No. 4D19-1537, 2020 WL 3067760 (June 10, 2010). There the Havers learned that their neighbor was operating an adult family-care home at her residence. *Id.* at *1. They filed, among other claims, a declaratory and injunctive action against the City to require it to enforce the single-family zoning classification. *Id.* at *2. The *Haver* court felt that the *Trianon Park* decision was limited to immunity from tort actions, not suits for injunctive relief. *Id.* at *5. While the Florida courts of appeal may be in disagreement, the *Trianon* decision remains the latest Florida Supreme Court decision on the issue.

nothing in that statute or any other statute, mandates enforcement altogether. When Bolivar County's Development Code uses the word "shall," it does so only in the context of the job description for the person the Board employs to enforce the code. This language does not apply to the Board itself in making overall enforcement decisions.

¶40. Enforcement decisions inherently reflect choices that zoning authorities make, weighing numerous factors (cost, precedent, time assessments). As the Maryland Court of Appeals aptly said, "the enforcement arena is simply littered with decisions that are discretionary." *Falls Road Community Ass'n v. Baltimore Cty.*, 85 A. 3d 185, 193 (Md. 2014). Zoning authorities function like district attorneys who are charged with enforcing the law, but have discretion whether or not to proceed from an arrest to an indictment or even to trial. Whether county resources are better utilized by simply citing a violator or in engaging counsel to undertake a lawsuit or in even doing nothing is clearly a policy decision. In this case in particular, the Board had already undertaken several methods of enforcement, up to and including the filing of its own injunction against Lawson. When and how to press that suit was a choice that the Board had the discretion to make. Under the public policy function test, the Board's actions concerning zoning enforcement are discretionary.[9] Accordingly, the Shorts have failed to plead a viable cause of action for any breach of duty and the circuit court correctly granted the Board's motion to dismiss.

---

[9] Because we find zoning enforcement discretionary, the Board is immune from suit brought under the Mississippi Torts Claims Act as well. Mississippi Code Annotated section 11-46-9(1)(d) states that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . (d) Based upon the performance or failure to exercise or perform a discretionary function . . . whether or not the discretion is abused."

25

## II.     Whether the Shorts pleaded a cause of action for breach of duty under Mississippi Code Annotated section 25-1-45.

¶41.    The Shorts claim that the circuit court incorrectly dismissed their case because they sufficiently pleaded a statutory cause of action under section 25-1-45. This statute provides:

> If any county, county district, or municipal officer who has executed bond for the faithful performance of duty shall knowingly or wilfully fail, neglect, or refuse to perform any duty required of him by law or shall violate his official obligations in any respect, the president or, in the absence or disability or default of the president, the vice-president of the board of supervisors in case of a county or county district officer, and the mayor in case of a municipal officer, or any person interested in either case shall cause suit to be brought on the bond of such officer for the recovery of the damages that may have been sustained thereby.

*Id.*

¶42.    This statute has been used to support lawsuits filed against an official's insurer for dereliction of a mandatory duty by that public official or for the recovery of funds from the official by the bonding company itself. For example, in *Hartford Acc. & Indem. Co. v. Reedy*, 233 So. 2d 799 (Miss. 1970), a bonding company sued a hospital administrator for funds the bonding company had to pay the state auditor for a $6,000 shortage the auditor had found during the administrator's tenure. In *Adams v. Lee*, 72 Miss. 281, 16 So. 243, 243-44 (Miss. 1894), a State revenue agent on behalf of the city of City of Greenville sued John Lee, the county tax collector, and Lee's sureties, to recover money paid to Lee as city taxes that were never deposited into city treasury. In *Barnett v. Lollar*, 197 Miss. 574, 19 So. 2d 748, 748-49 (Miss. 1944), the state auditor, Barnett, sued Lollar, the county superintendent of education, and his sureties for money allegedly illegally withdrawn from county school funds. In 2010, the Mississippi Attorney General issued an opinion, saying:

> [A]lthough there is no provision in state law to reduce the salary of a sheriff due to his prolonged absence, the board of supervisors can file suit on his bond in accordance with Section 25-45-1 for recovery of damages caused by his actions or negligence.

Miss. Att'y Gen. Op. No. 2010-00194, *Jones*, 2010 WL 2019891 (Apr. 23, 2010). In all these cases, suits were brought against parties who had failed to perform a mandatory function.

¶43. Although section 25-1-45 may give standing to any interested party to sue an official's bonding company for recovery of damages, those damages must be caused by the failure of that official to perform a mandatory duty. Here, as discussed above, the Shorts cannot prove, with any set of facts, that the Board failed in "any duty required by law," i.e., a ministerial duty. Moreover, the Shorts did not sue the bonding companies on the Board members' bonds. Because zoning enforcement is a discretionary duty, any cause of action pleaded under section 25-45-1 fails as a matter of law.

### III. Whether the Shorts are entitled to attorney's fees.

¶44. The Shorts have no damages other than the attorney's fees they incurred throughout the events and litigation. Because the Shorts did not plead any viable cause of action, any damages they say they experienced are not recoverable.

> To warrant recovery, there must be a right of action for a wrong inflicted by the defendant and damages resulting to the plaintiff therefrom. Wrong without damage, or damage without wrong does not constitute a cause of action.

Mississippi Law of Damages §1:2 (3d ed. Oct. 2019). More aptly put, without a viable cause of action, the Shorts cannot show that the Board's alleged wrongdoing caused them damages.

27

¶45.   The Shorts cite *Tunica County v. Town of Tunica*, 227 So. 3d 1007 (Miss. 2017), as support for their claim of attorney's fees.   In that case, the County challenged the constitutionality of local laws, sanctioned by the legislature, that required the County to share a portion of the gaming fees it collected with the Town and the county School District.  *Id.* at 1012 (¶1).   The Town and School District filed a counterclaim for injunctive relief to compel the County to pay the fees it was wrongfully withholding.  *Id.* at 1014 (¶6).   The circuit court denied the County's request for declaratory relief, saying that the legislature had clearly mandated the fee sharing.  *Id*. at (¶8).   The circuit court further granted the Town and School District's request for injunctive relief and ordered the County to pay the Town and School District's attorney's fees.  *Id.; see also id.* at 1027 (¶48).   Among the issues on appeal was the appropriateness of the attorney's fee award.  *Id.*   The Mississippi Supreme Court found that the County had a legislatively-mandated obligation to share the gaming revenues which was the basis for the Town and School District's counterclaim.  *Id.* at 1017 (¶18).   The supreme court reviewed the attorney's fee issue because the Town and County had prevailed on their counterclaim for injunctive relief and may have been entitled to such fees.  Clearly the *Tunica County* case does not support any theory for recovery of attorney's fees in this case because the Shorts had no viable cause of action to support their suit for injunctive relief.  The Board did not fail to perform a mandatory duty as did the County in the *Tunica County* case.  Therefore the Shorts are not entitled to recover any damages or attorney's fees.

**Conclusion**

¶46.   Because we hold that zoning enforcement is a discretionary duty, the circuit court was

28

correct in dismissing the Shorts' case. There being no ministerial duty, we find no cause of action for injunctive relief nor any cause of action under section 25-1-45. Consequently, with no viable cause of action, the Shorts are not entitled to any recovery for damages, including attorney's fees.

¶47. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**